UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OLGA I. CAMACHO ALICEA,

Plaintiff,

v. Case No.: 8:22-cv-567-VMC-MRM

KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_________________________________/

**REPORT AND RECOMMENDATION**

Plaintiff Olga I. Camacho Alicea filed a Complaint on March 11, 2022. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claims for supplemental security income. The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed separate memoranda detailing their respective positions. (Docs. 16, 21). For the reasons set forth herein, the Undersigned recommends that the decision of the Commissioner be **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II. Procedural History

Plaintiff filed an application for supplemental security income on April 7, 2014, alleging a disability onset date of that same date. (Tr. at 16).[1] Plaintiff's claim was denied initially on September 9, 2014, and upon reconsideration on March 11, 2015. (*Id.*). Plaintiff began a written request for a hearing on March 16, 2015, but she did not file the request, resulting in it being considered abandoned. (*Id.*). This application was reopened in 2020. (*Id.*).

Subsequently, Plaintiff filed an application for supplemental security income, on January 7, 2016. (*Id.*). Following a hearing before an Administrative Law Judge ("ALJ"), an unfavorable decision on that application was issued on September 12,

---

[1] The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017). Because Plaintiff has two applications at issue, one before the new regulations and one after, both the old and the new regulations apply to Plaintiff's case.

2018. (*Id.*). That decision concerned only the period of January 7, 2016 through September 12, 2018. (*Id.* at 164-79).

Finally, on April 22, 2019, Plaintiff filed a third application for supplemental security income, alleging a disability onset date of September 13, 2018. (*Id.* at 16). Plaintiff's claim was denied initially on August 23, 2019, and upon reconsideration on January 3, 2020. (*Id.*). Plaintiff then requested a hearing before an ALJ, and ALJ Dean Syrjanen held a hearing on April 28, 2021. (*Id*. at 80-110; *see also id*. at 16). The ALJ held a supplemental hearing on September 1, 2021 to address the prior 2014 claim. (*Id.* at 45-52; *see also id.* at 16). The ALJ issued an unfavorable decision on September 20, 2021. (*Id*. at 16-35). The Appeals Council subsequently denied Plaintiff's request for review on February 2, 2022. (*Id.* at 7-9). Plaintiff then filed her Complaint with this Court on March 11, 2022. (Doc. 1). Plaintiff filed her memorandum in opposition to the Commissioner's decision on June 23, 2022, (Doc. 16), and the Commissioner filed a response on August 25, 2022, (Doc. 21). The matter is, therefore, ripe for the Court's review.

## III. Summary of the Administrative Law Judge's Decision

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment

that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 7, 2014, the prior alleged onset date, through January 6, 2018, the application date of a subsequent claim. (Tr. at 18-19). Additionally, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 22, 2019, the application date of the most recent claim. (*Id.* at 19). At step two, the ALJ determined that Plaintiff has the following severe impairments during all relevant time periods: "degenerative disc disease, fibromyalgia, left shoulder degenerative joint disease with labral tear, PTSD, anxiety, and depressive disorder (20 [C.F.R. §] 416.920(c))." (*Id.*).

At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 416.920(d), 416.925[,] and 416.926)." (*Id*. at 20).

At step four, the ALJ found that Plaintiff, at all relevant periods, has the residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds; but may occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. She is limited to occasional overhead reaching with the left upper extremity while being able to frequently reach in all other directions with the left upper extremity (nondominant). The claimant can never be exposed to workplace hazards such as moving mechanical party and unprotected heights. The claimant is limited to simple, routine, and repetitive tasks with no more than simple changes or decision making required. She can tolerate frequent, but not constant, interaction with supervisors, coworkers, and the public.

(*Id*. at 22). The ALJ also determined that Plaintiff "has no relevant past work (20 [C.F.R. §] 416.965." (*Id.* at 32).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant could perform at all periods relevant to this decision (20 [C.F.R. §§] 416.969 and 416.969a)." (*Id.*). Specifically, the ALJ, relying on Vocational Expert ("VE") testimony, found that Plaintiff "would be able to perform the requirements of representative occupations" such as: officer helper (*Dictionary of Occupational Titles* ("DOT") § 239.567-010); label coder (DOT § 920.587-014); and marker (DOT § 209.587-034). (*Id.* at 33). For these reasons, the ALJ held that Plaintiff: (1) "has not been under a disability, as defined in the Social Security Act, since April 7, 2014, the date the application was filed, through January 6, 2018 (20 [C.F.R. §] 416.920(g));" and (2) "has not been under a disability, as defined in the Social Security Act, since April 22, 2019, the date the application was filed through the date of this decision (20 [C.F.R. §] 416.920(g))." (*Id.* at 35).

## IV. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

## V. Analysis

On appeal, Plaintiff raises five issues. As stated by Plaintiff, the issues are:

1. Whether the ALJ properly considered Plaintiff's limitations with abilities in mathematics and computer use and performed a *de facto* reopening of the Plaintiff's 2016 application;

2. Whether the ALJ properly considered the opinion of state agency psychological consultant, Dr. Biscardi;

3. Whether the ALJ identified and resolved apparent inconsistencies between the VE testimony and the DOT;

4. Whether the VE's testimony about the job numbers at step five constituted substantial evidence to support the ALJ's decision; and

5. Whether the ALJ and the Appeals Council had constitutional authority to decide this case.

(Doc. 16 at 3, 7, 13, 18, 21). The Undersigned finds it appropriate to address the issues in a more logical order. Accordingly, the Undersigned will first address Plaintiff's fifth issue – whether 42 U.S.C. § 902(a)(3) is unconstitutional and necessitates a rehearing of Plaintiff's case. Then, the Undersigned will address Plaintiff's remaining four issues in sequence below.

### A. Whether 42 U.S.C. § 902(a)(3) Necessitates a Rehearing.

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3), (the "removal provision"). Under § 902(a)(3), the SSA's Commissioner is appointed to a six-year term and may not be removed from office by the President without a showing of cause. *See* 42 U.S.C. § 902(a)(3).

Plaintiff essentially argues that the § 902(a)(3) removal provision provides unconstitutional tenure protection to the Commissioner of the SSA, violates the

separation of powers, and, therefore, the SSA's structure is constitutionally invalid. (*See* Doc. 16 at 2 (citing 42 U.S.C. § 902(a)(3); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020))). To that end, Plaintiff impliedly asserts that the Commissioner was subject to the removal provision's allegedly unconstitutional tenure protection and, thus, any actions taken by the Commissioner or pursuant to the Commissioner's authority were unconstitutional. (*See id.*). For example, Plaintiff argues that, because the Commissioner delegated authority to the ALJ who issued a decision in Plaintiff's case and to the Appeals Council Judges, Plaintiff's claim was adjudicated by individuals who "had no lawful authority to do so." (*See id.* at 24 (citations omitted)). Plaintiff also asserts that her claim was decided under "a presumptively inaccurate legal standard" because the Commissioner issued regulations under which Plaintiff's application was decided. (*Id.* at 22).

The Commissioner "*agree[s]* that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause," (Doc. 21 at 6 (emphasis added) (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))), but disagrees that the removal provision necessitates a remand of Plaintiff's case, (*id.* at 6-7 (citation omitted)). Specifically, the Commissioner contends that Plaintiff cannot show a nexus between 42 U.S.C. § 902(a)(3)'s removal provision and any alleged harm suffered by Plaintiff. (*See id.* at 7-8 (citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021))).

The Commissioner maintains that Plaintiff has not demonstrated the requisite harm. The Commissioner contends that Plaintiff "cannot conceivably show how the President's supposed inability to remove the Commissioner without cause affected any ALJ's disability benefits decision, much less the decision on Plaintiff's claim." (Doc. 21 at 9). The Commissioner extends that argument to the Appeals Council as well. (*Id.*). Essentially, the Commissioner argues that because Commissioner Andrew Saul was not subject to any tenure protection under 42 U.S.C. § 902(a)(3), any potential nexus between the removal provision and the decision by the ALJ in Plaintiff's case was severed. (*See id.* at 9-11). Put simply, the Commissioner asserts that Plaintiff "cannot establish compensable harm by pointing to President Biden's decision to remove Andrew Saul from his position as Commissioner in July 2021." (*See id.* at 11).

The Commissioner next argues that Plaintiff's rehearing request should be denied under the harmless error doctrine, (*id.* at 13-14 (citations omitted)), the *de facto* officer doctrine, (*id.* at 14-15 (citations omitted)), the rule of necessity (*id.* at 15-16 (citations omitted)), and broad prudential considerations, (*id.* at 16-17 (citations omitted)).

On June 29, 2020, in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the United States Supreme Court held that a "for-cause" removal restriction on the President's executive power to remove the Consumer Financial Protection Bureau's ("CFPB") director violated constitutional separation of powers, but that the removal provision was severable such that the other provisions relating

to the CFPB's structure and duties "remained fully operative without the offending tenure restriction." *Seila L. LLC*, 140 S. Ct. at 2209 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010)).

Thereafter, on June 23, 2021, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the United States Supreme Court held that the Federal Housing Finance Agency ("FHFA") director's statutory for-cause removal protection was similarly unconstitutional. *Collins*, 141 S. Ct. at 1783. The Court also distinguished the unconstitutional removal provision in *Collins* from similar appointment provisions, *see, e.g.*, *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), noting that:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.

*Id.* at 1787 (emphasis in original). The Court did not, however, rule out the potential that an unconstitutional removal provision could "inflict compensable harm." *Id.* at 1788-89. To that point, the *Collins* Court listed examples of how compensable harms might be identified:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those

> situations, the statutory provision would clearly cause harm.

*Id.*

In this matter, the Commissioner agrees with Plaintiff that 42 U.S.C. § 902(a)(3) is unconstitutional because it violates the separation of powers. (Doc. 21 at 6 (citation omitted)). However, despite the parties' agreement, the Court need not determine the constitutionality of 42 U.S.C. § 902(a)(3)'s removal provision. In short, even assuming *arguendo* that the removal provision is unconstitutional, it would not necessitate a rehearing of Plaintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff. Accordingly, the Undersigned assesses whether the removal provision necessitates a rehearing of Plaintiff's claim, assuming *arguendo* that the provision is unconstitutional.

Plaintiff essentially contends that the allegedly unconstitutional nature of § 902(a)(3) automatically voids the Social Security Administration's decision in this case. (*See* Doc. 16 at 22-24). On the other hand, the Commissioner raises a host of arguments as to why Plaintiff's rehearing request should be denied. (*See* Doc. 21 at 6-17).

Here, the Undersigned agrees with the Commissioner's arguments and finds a rehearing is not required based solely on the allegedly unconstitutional removal provision for two reasons: (1) the removal provision is severable from the remainder

of the Social Security Act; and (2) Plaintiff has failed to show how the allegedly unconstitutional removal provision harmed her.

The Court in *Seila Law* noted that "one section of a statute may be repugnant to the Constitution without rendering the whole act void." *See Seila L. LLC*, 140 S. Ct. at 2208. Based on this principle, the Undersigned is not persuaded by Plaintiff's broad argument that 42 U.S.C. § 902(a)(3)'s removal provision divests the Commissioner of all authority under the Social Security Act or renders *all* of the Commissioner's actions "presumptively inaccurate." (*See* Doc. 16 at 22). Rather, like the offending provision in *Seila Law*, the Undersigned finds that 42 U.S.C. § 902(a)(3) can be severed from the remainder of the Act because the SSA can continue to fully function without the presence of the allegedly unconstitutional provision. *See Seila L. LLC*, 140 S. Ct. at 2209; *see also Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *5 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022) (citations omitted) (finding that remand based on the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted based, in part, on its severability from the remainder of the Act). Thus, the Undersigned finds that remand for a rehearing on this issue is not warranted.

Moreover, while the *Collins* Court recognized the potential that an unconstitutional removal provision could "inflict compensable harm," *see Collins*, 141 S. Ct. at 1788-89, the Undersigned has found no evidence suggesting that there is a connection between the removal provision and any possible harm to Plaintiff. For

example, Plaintiff has not shown that the President could not remove the Commissioner as a result of the alleged unconstitutional tenure, undermining the existence of a nexus between the provision and the unfavorable decision. Plaintiff fails to show that absent the alleged unconstitutional provision, Plaintiff's claim would have been decided differently at either the ALJ or the Appeals Council level. Indeed, Plaintiff has pointed to no portion of either the ALJ's decision or the decision of the Appeals Council that she contends would have been decided differently but for the alleged unconstitutional provision.

Furthermore, while the United States Supreme Court has not addressed this issue directly, Justice Kagan forecasted its outcome in *Collins*:

> [T]he majority's approach should help protect agency decisions that would never have risen to the President's notice. Consider the hundreds of thousands of decisions that the [SSA] makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block . . . [b]ut given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

*See id.* at 1802 (Kagan, J., concurring). Justice Kagan's reasoning supports the Undersigned's conclusion that there is no evidence in the instant case to suggest that a nexus exists between § 902(a)(3) and any compensable harm to Plaintiff.

For these reasons, even assuming *arguendo* that 42 U.S.C. § 902(a)(3)'s removal provision is unconstitutional, the Undersigned finds that the removal

provision does not necessitate remand or a rehearing of Plaintiff's claim. *See Seila L. LLC*, 140 S. Ct. 2183; *Collins*, 141 S. Ct. 1761; *see also Tibbetts*, 2021 WL 6297530, at *5, *report and recommendation adopted,* 2022 WL 61217 (holding that remand based on the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021) (finding that a plaintiff had failed to state a claim upon which relief could be granted because the plaintiff could not establish that the Acting Commissioner's unconstitutional tenure protection caused compensable harm).

**B. Whether the ALJ Performed a *De Facto* Reopening of the Plaintiff's 2016 Application.**

Plaintiff argues that there were matters in her second application (for the period January 7, 2016 to September 12, 2018) that the ALJ should have considered but did not. (Doc. 16 at 3-4). The failure to address those matters, Plaintiff contends, constituted a *de facto* reopening of the 2016 application. (*Id.* at 4). Specifically, Plaintiff maintains that the ALJ should have considered in the RFC assessment her limitations concerning mathematical and computer skills. (*Id.* at 4-5). Plaintiff asserts that "by concluding that the Plaintiff had no such limitations during the time periods relevant to [the] 2014 application or [the] 2019 application, or both, the ALJ effectively reconsidered the merits of the 2016 application and reopened it." (*Id.* at 6).

The Commissioner responds that the Court does not have subject matter jurisdiction to review the Commissioner's refusal to reopen a claim because the claim

was not constructively reopened or reconsidered on the merits. (Doc. 21 at 18). The Commissioner contends that the ALJ never addressed the merits of the 2016 application, focusing instead on the distinctive medical record in the 2019 application. (*Id.* at 18-19). The Commissioner also argues that "the Eleventh Circuit has specifically rejected the requirement that the ALJ give preclusive effect to another ALJ's RFC assessment noting that administrative *res judicata* does not apply because the subsequent ALJ's assessment 'concerned an unadjudicated time period.'" (*Id.* at 19-20 (quoting *Moreno v. Astrue*, 366 F. App'x 23, 27 (11th Cir. 2010))).

Generally, "district courts do not have jurisdiction over the Commissioner's refusal to reopen a claim, since such a refusal is not a 'final decision' within the meaning of § 405(g)." *Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003). Federal courts, thus, lack subject matter jurisdiction to review denials of requests to reopen claims, except in two limited circumstances: "(1) the claimant raises a colorable constitutional claim, or (2) the Commissioner *de facto* reopens and reconsiders the merits of the prior administrative determination or decision." *Bello v. Comm'r of Soc. Sec.*, 460 F. App'x 837, 840 (11th Cir. 2012). "[A] final decision by the Secretary will be deemed reopened if it is 'reconsidered on the merits to any extent and at any administrative level.'" *Id.* (quoting *Cherry v. Heckler*, 760 F.2d 1186, 1189 (11th Cir. 1985)).

Plaintiff's argument necessarily implies that ALJ Syrjanen was required to apply administrative *res judicata* to the 2016 application's finding on Plaintiff's past

relevant work. *See Passopulos*, 976 F.2d at 646 ("[T]he Secretary's final decision will be deemed reopened if the ALJ [(1)] does not apply *res judicata* and [(2)] bases an ultimate determination on a review of the record in the prior application."). "Administrative res judicata applies when an agency has 'made a previous determination or decision . . . about [a claimant's] rights on the same facts and on the same issue or issues, and [that] previous determination or decision has become final by either administrative or judicial action.'" *Torres v. Comm'r of Soc. Sec.*, 819 F. App'x 886, 888 (11th Cir. 2020) (quoting 20 C.F.R. § 404.957(c)(1)).

The Undersigned finds the Eleventh Circuit's decision in *Moreno v. Astrue*, 366 F. App'x 23 (11th Cir. 2010) instructive on this issue. In that case, the district court affirmed the ALJ's denial of the plaintiff's 2003 application for disability insurance benefits. *Id.* at 25. The Eleventh Circuit subsequently affirmed the district court's ruling, in relevant part, on the basis that the ALJ had not failed to give a prior disability determination administrative *res judicata*. *Id.* at 27. In essence, the plaintiff had a prior 2001 application in which an ALJ found the plaintiff had several severe impairments and a particular RFC. *Id.* at 25. The ALJ for the 2003 application found fewer severe impairments and an RFC that differed from the previous RFC in a few ways. *Id.* at 26. The plaintiff argued that the ALJ for the 2003 application should have given preclusive effect to the 2001 RFC assessment. *Id.* Disagreeing, the Eleventh Circuit held that the administrative *res judicata* did not apply because the plaintiff's 2003 application "concerned an unadjudicated time period." *Id*. at 27.

The same is true here. ALJ Syrjanen did not cite a single medical record from, receive or elicit testimony related to, or take any action concerning the RFC during the January 7, 2016 through September 12, 2018 period. (Tr. at 22-32). In short, ALJ Syrjanen's decision concerned *only* "an unadjudicated time period." *Moreno*, 366 F. App'x at 27; *see also Tomaszewski v. Colvin*, 649 F. App'x 705, 706 (11th Cir. 2016) ("[W]e agree with the district court that res judicata does not apply because [the plaintiff's] new SSI application covers a different time period, and involves new evidence that is independent from the prior application."). Plainly, the ALJ did not base his determination on a review of the 2016 application. *See Passopulos*, 976 F.2d at 646. Nor did the 2016 application consider the same body of evidence that ALJ Syrjanen did, such that administrative *res judicata* should have applied. *Torres*, 819 F. App'x at 888. As a result, the Undersigned does not find that the ALJ conducted a *de facto* reopening of the 2016 application such that remand would be warranted.

**C. Whether the ALJ Properly Considered a State Agency Psychological Consultant's Opinion.**

Plaintiff objects to the ALJ's consideration of the opinion of Dr. David L. Biscardi, a state agency psychological consultant. (Doc. 16 at 9). In general, Plaintiff argues that the "ALJ misread Dr. Biscardi's opinion, and therefore, improperly gave it partial weight." (*Id.* at 13). First, Plaintiff contends that the ALJ did not dispute Dr. Biscardi's findings concerning limitations in the area of concentration, persistence, or pace and interacting with others, so the ALJ appears to have agreed with those findings. (*Id.* at 9). Yet, Plaintiff faults the ALJ's RFC

assessment for "missing a key limitation stating that the Plaintiff has moderate problems carrying out detailed instructions." (*Id.* at 9-10).

Plaintiff also argues that the ALJ erroneously considered Dr. Biscardi's opinion because the ALJ noted that Plaintiff had "'no limitations in understanding, remembering, or applying information and adapting or managing herself,'" while "Dr. Biscardi rated the Plaintiff's limitations in both areas as mild." (*Id.* at 10 (quoting Tr. at 29-30)). That inaccurate reading, according to Plaintiff, led the ALJ to err by concluding Dr. Biscardi's opinion was internally inconsistent. (*Id.* at 10-11). And Plaintiff maintains that the ALJ stated that "the limitation of the Plaintiff to 'carry out no more than 1-3 step instructions', identified by Dr. Biscardi, 'likely accommodates' the Plaintiff's 'moderate deficits in concentration, persistence, or pace.'" (*Id.* at 11 (quoting Tr. at 30)). Despite that acceptance, Plaintiff contends that the limitation does not appear in the ALJ's RFC determination, nor does the RFC determination account for that limitation in limiting Plaintiff to simple tasks. (*Id.* at 12).

The Commissioner disagrees, arguing that the ALJ fully considered Dr. Biscardi's opinion and properly applied the Commissioner's regulations. (Doc. 21 at 22). Specifically, the Commissioner asserts that the ALJ "properly explained that he determined Dr. Biscardi's opinion was only entitled to partial weight because it was only partially consistent with the record and partially supported by the clinical record." (*Id.* at 23). The Commissioner contends that Plaintiff confuses the ALJ's evaluation of Dr. Biscardi's opinion and lacks logical support in her argument that

limiting her to simple tasks "somehow did not account for Dr. Biscardi's opinion that she could not perform more complex procedures." (*Id.*). Finally, the Commissioner claims that Plaintiff overly relied "on Dr. Biscardi's notations in section I of the MRFC form." (*Id.*). That section of the form, the Commissioner argues, "'is merely a worksheet' and 'does not constitute the RFC assessment.'" (*Id.* at 24 (quoting The Commissioner's Program Operations Manual System ("POMS") DI 24510.060(B)(2)).

Again, it is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record. "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them." *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

The Undersigned also notes that the ALJ is responsible for determining the claimant's RFC, and he must consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 416.946(c). In doing so, the ALJ "is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (quoting 20 C.F.R. §

404.1527(f)(2)(i)); *see also* SSR 96-6p. Under the new regulations, however, an ALJ does not have to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 416.920c(b)(1). "Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sep. 26, 2019) (internal citation omitted). Furthermore, the "new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'" *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 6-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007)).[2]

Here, the ALJ began his discussion of Dr. Biscardi's opinion by noting that Dr. Biscardi found Plaintiff to have "moderate deficits in interacting with others and concentrating, persisting, or maintaining of pace" and "no limitations in understanding, remembering, or applying information and adapting or managing herself." (Tr. at 29). The ALJ added that Dr. Biscardi opined that Plaintiff could

---

[2] Because of the unique posture of this case, the ALJ considered the opinion evidence of Dr. Biscardi under both the old and new rules. (*See* Tr. at 29-30). Plaintiff acknowledges that fact. (Doc. 16 at 9 ("[T]he ALJ appears to have considered opinion evidence from Dr. Biscardi based on both pre- and after-March 27, 2017, rules.")). Plaintiff challenges the ALJ's decision to give Dr. Biscardi's opinion partial weight under either set of rules. (*Id.*). The Undersigned does the same by limiting the above analysis solely to Plaintiff's arguments.

"carryout and sustain performance for 1-3 tasks, complete a normal workday, interact briefly and superficially with coworkers and supervisors; while also being able to adapt and manage changes/stressors associated with simple competitive work opinion." (*Id.*). The ALJ then gave Dr. Biscardi's opinion partial weight. (*Id.*). He agreed with Dr. Biscardi that Plaintiff had moderate limitations in functioning, but he found Plaintiff "is further limited in the ability to adapt or manage herself than opined by Dr. Biscardi." (*Id.*). The ALJ cites the record for Plaintiff being tearful and anxious at the consultative examination while also indicating her own hypervigilance and some levels of agoraphobia. (*Id.* (citing Tr. at 1210-14)).

Additionally, the ALJ found Dr. Biscardi's opinion to be "somewhat inconsistent." (*Id.*). In discussing that perceived inconsistency, the ALJ stated:

> In the once [sic] instance he indicates the claimant has no limitations in understanding, remembering, or applying information; however, [Dr. Biscardi] then details a retained ability to understand, remember, and carry out no more than 1-3 step instructions. While it is likely this limitation also accommodates the claimant's moderate deficits in concentration, persistence, or pace; it is internally inconsistent, nonetheless.

(*Id.* at 29-30). In relevant part, the ALJ's RFC determination of Plaintiff contained the following limitation: "The claimant is limited to simple, routine, and repetitive tasks with no more than simple changes or decision making required." (*Id.* at 22).

Here, Plaintiff appears to argue that the ALJ implicitly acknowledged Dr. Biscardi's opinion concerning an ability to perform 1-3 step instructions. (Doc. 16 at 11 ("In addition, the ALJ state that the limitation of the Plaintiff 'to carry out no

more than 1-3 step instructions', identified by Dr. Biscardi, 'likely accommodates' the Plaintiff's 'moderate deficits in concentration, persistence, or pace.'" (quoting Tr. at 30))). But the ALJ found the 1-3 step instructions limitation to be the internally inconsistent part of Dr. Biscardi's opinion. (Tr. at 30 ("In the [one] instance he indicates the claimant has no limitations in understanding, remembering, or applying information; however, then details a retained ability to understand, remember, and carry out no more than 1-3 steps instructions.")). While the ALJ mentioned that the instruction "likely . . . accommodates" the limitations in concentration, persistence, or pace, the ALJ expressly found "it is internally inconsistent, nonetheless." (*Id.*).

Upon independent review, the Undersigned notes that Dr. Biscardi's mental RFC assessment states that Plaintiff has no understanding and memory limitations. (*Id.* at 219). But he then explains that Plaintiff is limited to the performance of "1-3 step tasks" based on Plaintiff's capacity to understand and remember. (*Id.* at 221). Thus, the Undersigned finds that the ALJ's finding of an internal inconsistency as to that assessment is supported by Dr. Biscardi's mental RFC assessment and, thus, substantial evidence in the record. It is not the role of this Court to reweigh the evidence to reach an alternate conclusion. *See Jones*, 695 F. App'x at 508. As a result, the Undersigned finds the ALJ's evaluation of Dr. Biscardi's opinion to be supported by substantial evidence.

Further, Plaintiff argues that the ALJ appears to have agreed with Dr. Biscardi's opinion concerning the Plaintiff's limitations in the areas of concentration, persistence, or pace and interacting with others. (Doc. 16 at 11). The Undersigned

agrees. (*See* Tr. at 30 ("Moreover, given the moderate deficits in adapting or managing herself as well as concentrating, persisting, or maintain[ing] of pace (Ex. B9F) it is reasonable to adopt the remainder of the residual functional capacity assessment.")). The question remains, then, as to whether the ALJ's RFC assessment improperly omitted any limitation regarding carrying out detailed instructions. (Doc. 16 at 9-10 (citing Tr. at 29-30, 219)). Ultimately, the Undersigned finds that while Dr. Biscardi found that Plaintiff was moderately limited in the ability to carry out detailed instructions, (Tr. at 219), Plaintiff has not demonstrated that the ALJ's RFC failed to account for that limitation for at least three reasons.

First, while Plaintiff relies heavily on *Buckwalter v. Acting Commissioner of Social Security*, 5 F.4th 1315 (11th Cir. 2021), the Undersigned is not persuaded that *Buckwalter* is apposite. Plaintiff contends that the Eleventh Circuit in found in *Buckwalter* that a limitation concerning simple tasks related to complexity but that a limitation as to detailed tasks concerned length. (Doc. 16 at 10). Yet, the Eleventh Circuit was considering the issue in terms of whether a limitation of understanding, carrying out, and remembering simple instructions conflicted with a reasoning of level two that required an ability to "carry out detailed but uninvolved" instructions. 5 F.4th at 1323. The Eleventh Circuit held that there was no conflict because "'simple' does not plainly contradict 'detailed.'" *Id.*

Given the nature of the arguments considered by the Eleventh Circuit, the Undersigned finds that *Buckwalter* does not extend as far as Plaintiff would like. That

is, the Eleventh Circuit did not hold that simple and detailed tasks are distinct enough to warrant independent RFC assessment limitations. Instead, the Eleventh Circuit held that a limitation to simple tasks did not present an apparent conflict with a reasoning of level two. *Id.* at 1323-24. Nevertheless, to the extent that holding is applicable to the issue here, the Undersigned notes that all three jobs that the ALJ found Plaintiff could work have level two reasoning. (Tr. at 33); *see also* DOT (4th ed. 1991), § 239.567-010, 1991 WL 672232; *id.* at § 920.587-014, 1991 WL 687915; *id.* at § 209.587-034, 191 WL 671802. Thus, there would be no conflict or problem in the ALJ's RFC assessment including a limitation to simple tasks.

Second, the Undersigned finds that "[t]o the extent Plaintiff argues that her moderate limitation with following detailed instructions needed to be explicitly referenced in the residual functional capacity . . . determination or the hypothetical question, this is plainly contradicted by binding case law." *Servellon v. Comm'r of Soc. Sec.*, No. 6:20-cv-530-CEM-JRK, 2021 WL 7501166, at *3 (M.D. Fla. Sep. 30, 2021) (citing *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1269 (11th Cir. 2015); *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 612 (11th Cir. 2015)). Instead, "[q]uestions that 'implicitly account[] for the claimant's limitations' are sufficient to meet this requirement." *Henry*, 802 F.3d at 1269 (quoting *Winschel*, 631 F.3d at 1180-81). Here, the ALJ limited Plaintiff to simple, routine, and repetitive tasks with no more than simple changes or decision making required. (Tr. at 22). "[T]he limitation in the RFC . . . to 'simple[, routine, and] repetitive tasks' sufficiently accounts for the ALJ's findings of Plaintiff's ability to follow instructions, both

simple and detailed." *Servellon*, 2021 WL 7501166, at *3 (quoting *Richardson v. Astrue*, No. 3:10-cv-935, 2012 WL 667932, at *9 (M.D. Fla. 29, 2012) for the proposition that an ALJ's hypothetical to a VE is sufficient when, "with respect to Plaintiff's problems with detailed instructions, the ALJ stressed Plaintiff was limited to performing simple tasks").

Third, Plaintiff focuses exclusively on this one aspect of Dr. Biscardi's opinion without challenging the other facets of that opinion or the other opinions in the record. (*See generally* Doc. 16). An ALJ's RFC need not stem from only one source, and Plaintiff largely ignores other evidence in the record that establishes substantial evidence. *See, e.g.*, *Ealy v. Kijakazi*, No. 1:20-cv-00025-SRW, 2021 WL 4443702, at *11 (M.D. Ala. Sep. 28, 2021) ("[T]he record reflects that the ALJ considered other evidence along with Dr. Hinton's entire opinion in fashioning the RFC, although Plaintiff focuses on only one part of Dr. Hinton's opinion.").

In sum, the Undersigned does not find that Plaintiff established that the ALJ erred in either his supportability or consistency analysis of Dr. Biscardi's opinion or that the ALJ's decision lacked substantial evidence. *See* 20 C.F.R. §§ 416.920c, 416.927.

### D. Whether the ALJ Failed to Identify and Resolve Apparent Conflicts Between the VE Testimony and the DOT.

Plaintiff maintains that the ALJ erred because his RFC assessment was inconsistent with the DOT, and the ALJ did not attempt to address those alleged conflicts. (Doc. 16 at 15). Plaintiff asserts that there were two inconsistencies: (1)

the ALJ limited Plaintiff to never climbing ladders, ropes, and scaffolds, and to occasional climbing of stairs, but the requirements of label coder, DOT § 920.587-014 include occasional climbing, (*id.*); and (2) the ALJ limited Plaintiff to performing "simple changes," but the job requirements of office helper include "'[p]erforming a variety of duties, often changing from one task to another of a different nature without loss of efficiency or composure,'" (*id.* (citing Doc. 16-1 at 4)). In addition, Plaintiff argues that failure to address the conflicts were not harmless because the question of whether the remaining job the ALJ found Plaintiff could perform, marker, DOT § 209.587-034, exists in significant numbers in the national economy is a question of fact inappropriate for resolution at this stage. (*Id.* at 16-18 (citing *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309 (11th Cir. 2021))).

In response, the Commissioner disagrees that there was any apparent conflict between the VE's testimony and the DOT. (Doc. 21 at 25). As to the label coder position, the Commissioner agrees that Plaintiff accurately outlined the DOT's description but contends that the "ALJ is not required to draw inferences about job requirements that are unsupported by the DOT's text." (*Id.* at 26). By the Commissioner's account, the DOT job description for label coder does not "describe any duty that could reasonably be associated with the climbing of ladders, ropes, or scaffolds." (*Id*. at 27). Turning to the office helper job, the Commissioner argues that "the ability to perform a variety of duties does not conflict with a limitation to simple changes." (*Id.*). Also, the Commissioner maintains that the DOT describes the office helper position as unskilled work "which needs little or no judgment to do

simple duties that can be learned on the job in a short period of time." (*Id.* at 28 (citing 20 C.F.R. § 416.968)). In the event that the Court finds a conflict existed, the Commissioner asserts that the ALJ's error would be harmless because the facts here are materially different from those in *Viverette*. (*Id.* at 28-33).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel*, 631 F.3d at 1180. "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips*, 357 F.3d at 1242. An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a VE to determine whether there are jobs that exist in the national economy that a claimant can perform. *Winschel*, 631 F.3d at 1180. If the ALJ decides to use a VE, for the VE's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

In addition, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). Thus, an ALJ must ask the VE whether a conflict between his or her testimony and the DOT exists and must ask for an explanation if there appears to be a conflict. *Id.* at 1363. Moreover, whenever a

conflict is apparent, the ALJ must ask the VE about it. *Id.* An apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony. At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* at 1365. "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363. This is an independent obligation of the hearing examiner. *Id.*

Here, the ALJ asked the VE some hypothetical questions in which the VE was to assume an individual with the same age, education, and work experience as Plaintiff. (Tr. at 97). The first hypothetical, limiting the VE's consideration to someone who could perform light work, was as follows:

> The person could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; occasionally stoop, kneel, crouch and crawl; limited to occasional overhead reaching with the left, upper extremity; limited to frequent reaching in other direction with the left, upper extremity; could never be exposed to workplace hazards, such as moving, mechanical parts and unprotected heights. The individual would be limited to simple, routine, and repetitive tasks, with no more than simple changes or decision-making required. The individual would be limited to frequent interaction with supervisors, co-workers, and the public.

(*Id.* at 97-98). Based on that hypothetical, the VE testified that three jobs would exist in significant numbers in the national economy: (1) office helper (35,700 jobs); (2) label coder (37,800 jobs); and (3) marker (129,000 jobs). (*Id.* at 98). The ALJ then

changed the hypothetical to limit the individual to sedentary work. (*Id.*). The VE testified that three other jobs would exist in significant numbers: (1) circuit board assembler (34,300 jobs); (2) addresser (12,600 jobs); and (3) document preparer (46,700 jobs). (*Id.* at 98-99).

The ALJ changed the hypothetical again, this time to allow the individual to alternate positions every 30 minutes without leaving the workstation, and the VE testified that all three sedentary jobs would remain in significant numbers. (*Id.* at 99). When asked if an individual would need to be absent from work two or more times a month or be off task in excess of fifteen percent of a normal workday, the VE responded that none of the jobs would remain. (*Id.*). Finally, the ALJ inquired whether jobs would remain if the individual needed to elevate their legs to waist level throughout the day, and the VE answered in the negative. (*Id.*).

When asked, the VE testified that her testimony was consistent with the DOT. (*Id.*). However, she noted that "some of the issues discussed here today aren't specifically addressed in the DOT, such as leg elevation, off task, absenteeism, left versus right, and bilateral reaching, and reaching in different planes." (*Id.* at 99-100). For those types of issues, the VE relied on her experience in job placement. (*Id.* at 100).

The Undersigned begins by evaluating whether any error by the ALJ would be harmless. Even assuming that the ALJ had erred in not identifying and resolving an apparent conflict, the Undersigned finds that the error would be harmless because the ALJ found the remaining job, marker, provided a sufficient significant number of

jobs in the national economy. In *Viverette v. Commissioner of Social Security*, the trial court held that any error by the ALJ in failing to resolve an apparent conflict between the DOT and the VE's testimony was harmless. No. 8:18-cv-2773-J-PDB, 2020 WL 1329992, at *10 n.12 (M.D. Fla. Mar. 23, 2020), *rev'd and remanded,* 13 F.4th 1309 (11th Cir. 2021). In support, the trial court noted that there were two other jobs that existed in the national economy that the plaintiff could perform. *Id.*

In reversing the trial court's decision, the Eleventh Circuit found that the ALJ's error in failing to resolve the conflict could not be deemed harmless. *See Viverette*, 13 F.4th at 1317-19. More particularly, the Eleventh Circuit observed that while "the VE testified that there are 104,000 document preparer positions available nationally, 7,000 final assembler positions available nationally, and 14,000 check weigher positions available nationally," the ALJ referenced the testimony *collectively* when concluding that work existed in significant numbers in the national economy that the plaintiff could perform. *Id.* at 1318. The Eleventh Circuit highlighted that the ALJ made no findings as to how many jobs were available for each position individually or whether the number of the remaining two jobs, either separately or collectively, constituted a significant number, absent the third. *Id*. The Eleventh Circuit also observed that eighty percent of the jobs the ALJ considered were affected by the conflict. *Id.*

In light of the collective nature of the ALJ's findings, the Eleventh Circuit concluded that remand was necessary. *Id.* at 1318-19. In support, the Eleventh Circuit explained that "[w]hether there are a significant number of jobs a claimant is

able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ]." *Id.* at 1318. Because the finding involved a question of fact to be determined by the ALJ and given the number of jobs affected by the conflict, the Eleventh Circuit concluded that it was "hesitant to make any factual determinations . . . about whether the final assembler or check weigher positions exist in significant numbers in the national economy." *Id.* at 1318-19. As a result, the Eleventh Circuit remanded the case to the trial court and instructed that the decision be remanded to the Commissioner for further proceedings. *Id.* at 1318-19.

Upon review, the Undersigned finds any error by the ALJ in identifying apparent conflicts harmless. Plaintiff argues that "with 35,700 Officer Helper and 37,800 Label Coder jobs out of the equation, the ALJ should have considered whether the Marker jobs constitute a significant number of jobs in the national economy." (Doc. 16 at 17). But the ALJ did just that. The ALJ explicitly found that "the number of jobs cited for *each* representative occupation *alone* constitutes a significant number." (Tr. at 34 (emphasis added)). Thus, without specifically naming it, the ALJ found that the marker position, with 129,000 jobs in the national economy, constituted a significant number, (*id.* at 33), making this case materially different from *Viverette* in which the ALJ only discussed the jobs collectively, *Viverette*, 13 F.4th at 1318. Ultimately, Plaintiff does not argue that the ALJ failed to address a conflict with the marker position or otherwise challenge that substantial evidence supports the ALJ's finding concerning the marker position and the number of jobs. Therefore, the record is left reflecting that the ALJ found a position with

129,000 jobs to constitute a significant number in the national economy, in and of itself. (*See* Tr. at 34). The Undersigned, therefore, finds harmless any error related to the ALJ's alleged failure to resolve apparent inconsistencies related to the office helper or label coder positions.

Because the Undersigned finds that any error would be harmless, an analysis of whether the ALJ did in fact err may not be necessary. Nevertheless, the Undersigned analyzes the issue to benefit the presiding United States District Judge and the parties, in the event that the District Judge disagrees with the Undersigned's findings and recommendations above.

Plaintiff first finds error with regard to the label coder position because that job requires occasional climbing, but the RFC assessment limited Plaintiff to never climbing ladders, ropes, and scaffolds, and to occasional climbing of stairs. (Doc. 16 at 15). The label coder position only states that occasional climbing is needed. DOT (4th ed. 1991), § 920.587-014, 1991 WL 687915. Because it does not specify the type of climbing expected of someone in that position, the Undersigned finds that no apparent conflict existed. *See Bennett v. Comm'r of Soc. Sec.*, No. 2:17-cv-582-FtM-MRM, 2019 WL 410271, at *8 (M.D. Fla. Feb. 1, 2019) (finding no apparent conflict when DOT position required reaching without specifying the type of reaching and the ALJ limited the plaintiff to no overhead reaching). Nothing in the label coder position description would lead to the reasonable conclusion that climbing ladders, ropes, or scaffolds would be required. DOT § 920.587-014, 1991 WL 687915. The ALJ was not required to "draw inferences about job requirements that are

unsupported by the DOT's text and then resolve conflicts between the VE's testimony and those unsupported inferences." *Christmas v. Comm'r of Soc. Sec.*, 791 F. App'x 854, 857 (11th Cir. 2019). As a result, the Undersigned finds Plaintiff's argument unavailing.

Next, Plaintiff challenges the ALJ's alleged failure to address the inconsistency between the ALJ's limitation of Plaintiff to "simple changes," (Tr. at 22), and the office helper position, which requires "[p]erforming a variety of duties."[3] *See* DOT (4th ed. 1991), § 239.567-010, 1991 WL 672232. But, as the Commissioner notes, the DOT describes the position as a specific vocational preparation ("SVP") 2, which is categorized as unskilled work. *Id.*; *see also* SSR 00-4p ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2."). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). A simple act is one that is "'not complicated or intricate.'" *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019) (quoting *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010)). Thus, the concept of "simple" seems to concern, at least in this context, the complexity of the task. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (indicating that there is no conflict between simple work and jobs with reasoning level 2).

---

[3] Plaintiff submits that it requires "[p]erforming a variety of duties, often changing from one task to another of a different nature without loss of efficiency or composure." (Doc. 16-1 at 4).

Again, Plaintiff requests that the ALJ infer more than the text of the DOT suggests. The Undersigned does not find an apparent conflict regarding an ability to perform a variety of duties (even changing duties often without losing efficiency or composure) and being limited to simple changes. The ALJ's hypothetical stated that "[t]he individual would be limited to simple, routine, and repetitive tasks, with no more than simple changes or decision-making required." (Tr. at 97). As an unskilled work position, the office helper is "work which needs little or no judgment to do simple duties." 20 C.F.R. § 416.968(a). Because a simple duty is not a complicated one, *see Lawrence*, 941 F.3d 140, 143, the Undersigned does not find that a conflict was "reasonably ascertainable or evident from a review of the DOT and the VE's testimony" such that the ALJ was required to resolve it. *Washington*, 906 F.3d at 1365; *see also Christmas*, 791 F. App'x at 857.

**E. Whether the Job Numbers at Step Five Constituted Substantial Evidence.**

Finally, Plaintiff argues that "the ALJ's decision was unsupported by substantial evidence because the ALJ relied on the VE testimony about job numbers that were specific to a larger group of jobs in the industry rather than the three specific DOT jobs the ALJ found the Plaintiff could perform at step five." (Doc. 16 at 21). Plaintiff contends that the VE took the job numbers about which she testified from JobBrowser Pro ("JBP") software and adjusted the numbers based on full-time positions and the industries that still perform the positions. (*Id.* at 20 (citing Tr. at 100)). Plaintiff takes issue, though, with the numbers given for the office helper and

label coder positions because "[t]he job numbers for Office Helper and Label Coder the VE provided appear to closer match the industry numbers rather than DOT-specific numbers." (*Id.* at 21). That, Plaintiff asserts, is inconsistent with the holding of *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020). (Doc. 16 at 19).

The Commissioner disagrees, noting that Plaintiff does not dispute the VE's testimony about the number of jobs available for the marker, circuit board assembler, addresser, and document preparer positions. (Doc. 21 at 34 (citing Tr. at 97-99)). And the Commissioner maintains that "[t]he VE explained that her job number calculation began with JobBrowser Pro, looking at the DOT numbers as opposed to group numbers, and adjusting those number based on developments." (*Id.* at 35). In general, the Commissioner asserts that substantial evidence supports the ALJ's decision and that Plaintiff "overstates . . . [the] holding in *Goode*." (Doc. 21 at 35-36).

As noted earlier, the VE testified that the jobs of office helper, label coder, and marker would have 35,700, 37,800, and 129,000 jobs, respectively. (Tr. at 98). She also testified that, to determine these numbers, she started with JBP. (*Id.* at 100). She clarified that she looks "at individual DOT code numbers, as opposed to group numbers." (*Id.*). When answering questions from Plaintiff's counsel, the VE testified that she would not be able to independently do the calculation that JBP does. (*Id.* at 103). Yet the VE added that she finds JBP to be reliable because it is "consistent with [her] experience" over thirty-seven plus years. (*Id.* at 104).

In his decision, and as the Undersigned discussed earlier, the ALJ noted the three jobs of officer helper, label coder, and marker and found "the number of jobs cited for each representative occupation alone constitutes a significant number." (*Id.* at 34). Further, the ALJ considered Plaintiff's objections as to the VE's testimony and overruled them all. (*Id.*). As to the job numbers, the ALJ specifically noted that whether the VE's approximation of job numbers is reliable is done on a case-by-case basis. (*Id.*). In this case, the ALJ found the ALJ's assessment of job numbers reliable, stating:

> The vocational expert relied upon the Department of Labor-Bureau of Labor Statistics, JobBrowser Pro, and the Dictionary of Occupational Titles, which are administratively recognized sources. In addition, the vocational expert provided a reasonable and principled explanation of the methodology she used to approximate the job numbers. The vocational expert explained the basics of the methods she uses and how she used them in this case. She further explained that she also relied upon her research, training, and experience. Finally, the vocational expert is well-qualified to provide these estimates based upon her extensive experience performing vocational evaluations and placing individuals with disabilities in jobs. Accordingly, the undersigned finds that the claimant's representative failed to establish that the vocational expert's approach to estimating job numbers, including her sources and methodology, was wanting or inconsistent with Agency rules, regulations, or policy.

(*Id.* at 34-35).

Turning to *Goode v. Commissioner*, the plaintiff in that case challenged the ALJ's finding at step five of whether there existed a significant number of bakery worker jobs in the national economy. 966 F.3d 1277, 1280 (11th Cir. 2020). The

ALJ adopted the VE's testimony, and the district court affirmed that decision. *Id.* The Eleventh Circuit reversed on two grounds. *Id.* at 1281. First, "the vocational expert used the wrong [Standard Occupational Classification] SOC group code to determine whether there are a significant number of jobs in the national economy that [the plaintiff] could perform." *Id.* Second, "the numbers that the vocational expert cited from the wrong SOC group code substantially overstated the number of available bakery worker jobs that [the plaintiff] could perform." *Id.* at 1281-82. As to that second holding, the Eleventh Circuit took issue with the VE's use of job numbers that were "aggregate numbers for 65 separate DOT codes," when the plaintiff "was only capable of performing the job for only one of those DOT codes—that of bakery worker." *Id.* at 1283. On remand, the Eleventh Circuit highlighted two potential methods for the VE to use, including "the occupational density method" that "approximates job numbers using a software program known as JobBrowser Pro from SkillTRAN." *Id*. at 1284.

Similar to the apparent conflict issue above, the Undersigned begins with the harmless error analysis. Even assuming the ALJ had relied on testimony from the VE that provided improper numbers for the office helper and label coder positions, the Undersigned finds that the error would be harmless for the same reasons articulated earlier. That is, the ALJ found that the number of marker jobs constituted a significant number of jobs in the national economy. (Tr. at 34). Plaintiff does not challenge that the VE relied on the specific DOT code for the marker position when testifying about the number of positions. (Doc. 16 at 21

("[T]he VE arguably provided Marker numbers specific to the DOT code.")). Thus, the ALJ made an independent factual determination that, even absent the office helper and label coder positions, jobs existed in significant numbers in the national economy that Plaintiff could perform. As a result, the Undersigned finds the ALJ's decision is supported by substantial evidence.

Again, because the Undersigned finds that any error would be harmless, an analysis of whether the ALJ did in fact err may not be necessary. Nevertheless, the Undersigned analyzes the issue to benefit the District Judge and the parties, in the event that the District Judge disagrees with the Undersigned's findings and recommendations above.

Plaintiff's primary problem with the VE's calculation of job numbers in this case appears to be that Plaintiff produced her own reports through JBP, and the numbers are lower than what the ALJ determined. (Doc. 16 at 20; *see also* Docs. 16-1, 16-2, 16-3). The ALJ must have, Plaintiff's logic continues, relied on industry numbers instead of specific numbers to each DOT code. (Doc. 16 at 20-21). But the VE explicitly stated that she looked "at individual DOT code numbers, as opposed to group numbers." (Tr. at 100). Plaintiff did not challenge that assertion before the ALJ. Nor did Plaintiff produce the data she produces now to the ALJ. Because Plaintiff did not produce her data or raise the issue of the VE relying on potentially exaggerated job numbers to the ALJ, and "because the VE's testimony is the only evidence regarding the number of jobs available in the record, this Court is foreclosed

from considering other evidence." *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 320 (11th Cir. 2021) (citing *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)).

Even if the Court considers Plaintiff's provided data of JBP job numbers, "'plaintiff's lay assessment of the raw vocational data derived from [JBP] does not undermine the reliability of the VE's opinion.'" *Davis v. Berryhill*, No. 17-CV-293-N, 2018 WL 2208432, at *7 (S.D. Ala. May 14, 2018) (quoting *Cardone v. Colvin*, No. ED CV 13-1197-PLA, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 18, 2014)). "'The data presented by plaintiff . . . was unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context.'" *Id.* (quoting *Cardone*, 2014 WL 1516537, at *5). After all, the VE in this case did not rely solely on the JBP numbers, but she evaluated and adjusted them based on her own experience. (Tr. at 100).

To the extent that Plaintiff challenges the VE's data or methodology, the Undersigned finds that argument unpersuasive. (*See* Doc. 16 at 20-21). "[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise." *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) (citing 20 C.F.R §§ 404.1560(b)(2), 40.1566(e), 416.960(b)(2), 416.966(e)). In *Biestek v. Berryhill*, the Supreme Court held that a VE's testimony regarding the number of jobs in the national economy can constitute substantial evidence even when the VE, upon request, refuses to produce supporting data of that testimony. 139 S. Ct. 1148, 1151 (2019). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* at

1154. The Supreme Court emphasized the relative informality of disability hearings and noted the proper inquiry for the substantiality of evidence, as it applies to a VE's testimony, is a case-by-case basis, taking into account all features of the VE's testimony, and the record as a whole. *See id.* at 1157. Here, the VE expressly stated that she examined the "individual DOT code numbers, as opposed to group numbers." (Tr. at 100). She found the job numbers reliable, in part, because they were "consistent with [her] experience" over thirty-seven plus years. (*Id.* at 104). Plaintiff did not challenge the VE's experience or credentials. The Undersigned finds the VE's explanation sufficient and that such experience can constitute substantial evidence. *See Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) (finding the VE "properly considered the hypothetical scenario that the ALJ presented" based "on his own experience of surveying employers as well as the DOT").

## VI. Conclusion

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds no reversible error. Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).
2. The Clerk of Court be directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Tampa, Florida on January 9, 2023.

Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties